[No. A056836. First Dist., Div. Five. Oct. 29, 1992.]

In re DANIEL Z. et al., Persons Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
CHARLES Z. et al., Defendants and Appellants.

## Counsel

Clancy, Firpo & Weisinger and Peter A. Firpo for Defendants and Appellants.

Kelvin H. Booty, Jr., County Counsel, and Larry Lee Litke, Deputy County Counsel, for Plaintiff and Respondent.

## Opinion

**KING, Acting P. J.—**

### Introduction

Charles and Eulogia Z. appeal from orders declaring their children Daniel, Melissa and Nathan to be dependent children of the court (Welf. & Inst. Code, § 300). We hold (1) although an exception to the hearsay rule permits admission of a social study report at a child dependency jurisdictional hearing, this exception does not apply to claims of abuse contained in the report if the children were incompetent when they made the statements; (2) if children are found incompetent to testify at the jurisdictional hearing because of inability to understand the duty to tell the truth, there is a rebuttable presumption of incompetency when they made the earlier statements contained in the social study report; (3) this presumption may be rebutted by evidence the children were competent when they made the earlier statements; and (4) even if the children were incompetent, the statements in the social study report are still admissible if they meet the requirements of the spontaneous statement exception to the hearsay rule, since this does not require a finding of competency.

## II. BACKGROUND

### A. *The Report of Abuse*

In the summer and fall of 1991, Daniel, Melissa and Nathan attended day care in the home of Carol Keene. Daniel was four years old, Melissa was three years old and Nathan was eighteen months old. Since July, Keene suspected Charles was sexually abusing Melissa and Daniel.

On October 9, 1991, the Newark Police Department received an anonymous report of abuse. An officer visited the family residence and interviewed Melissa. The next day, all three children were delivered into protective custody.

Juvenile dependency petitions were filed on October 15, 1991. The petitions alleged sexual abuse as to Melissa and Daniel (Welf. & Inst. Code, § 300, subd. (d)), failure to protect as to Melissa and Nathan (Welf. & Inst. Code, § 300, subd. (b)) and abuse of a sibling as to Nathan (Welf. & Inst. Code, § 300, subd. (j)).

### B. *The Social Study Report of October 28, 1991*

A social study report prepared by the Alameda County Social Services Agency, dated October 28, 1991, concluded that Charles had sexually abused Melissa and Daniel. The report contained statements by the children, their day-care providers and child welfare workers.

### 1. *Statement by Carol Keene.*

Carol Keene said she noticed a change in Melissa's behavior in July 1991. Melissa seemed withdrawn. When Keene spoke with her she said, "Daddy put his dick in my peepee." Keene asked Daniel if he saw Charles do this, and Daniel replied that "he had seen his daddy put his peepee in Melissa's peepee lots of times." Daniel also said his father had "put his mouth on his peepee" and that his father "has a big, hard peepee." Keene checked Melissa's vaginal area, which appeared to be red and swollen. Keene brought the matter to Eulogia's attention, and the children repeated the accusations to their mother in Keene's presence. Eulogia responded, "What am I supposed to do? I cannot support myself." Eulogia subsequently took Melissa to a physician, but by then the swelling had gone down.

In August, Melissa complained to Keene that her "peepee" hurt. Melissa had a white, flaky substance on her stomach, similar to dried semen.

On September 12, Melissa told Keene that "daddy touches her peepee." Daniel said his father put Melissa on a bed, removed her panties and put his fingers in Melissa's "peepee." Keene again observed that Melissa's vaginal area appeared to be red and swollen. Once again, Keene brought the matter to Eulogia's attention. When Eulogia asked Melissa what had happened, Melissa demonstrated how Charles had put his fingers in her "peepee."

On September 24, Melissa came to day care with a black eye. She told Keene that "Daddy did it." Daniel said Charles had pushed Melissa into some paneling because he had been mad at her. On several other occasions Keene observed lumps and bruises on various parts of Melissa's body. Nathan also had black eyes on several occasions, and was once burned between his thumb and index finger.

On October 9, Melissa told Keene that she did not want her father to put his "peepee" in her mouth anymore.

### 2. Statement by Stephanie Stortz.

Stephanie Stortz was Keene's employee. She frequently cared for the children. Melissa told Stortz her father "puts his peepee in her mouth." Daniel told Stortz he had seen his father put his fingers in Melissa's "peepee," and his father made Daniel put his hand on his father's hard "peepee."

### 3. The childrens' statements.

According to the October 28 social study report, "Melissa can state that daddy puts his peepee in her peepee. She can state that daddy put his peepee in her mouth. She can state that daddy puts his finger in her peepee." Similarly, "Daniel can state that he has seen his daddy put his peepee in Melissa's peepee a lot of times. Daniel is expected to state that daddy puts his mouth on his peepee and daddy has him put his hand on his daddy's peepee which is hard."

### 4. Statements by child welfare workers.

Child welfare worker Willa Hives interviewed Daniel and Melissa on October 10, 1991. Melissa said her father had touched her "peepee" with his fingers and put his "peepee" in her mouth. Daniel said he had seen Charles insert his hand into Melissa's "peepee," and when Daniel told Eulogia about Charles's conduct Charles told her he would not touch Melissa again.

Child welfare worker Rinda Neidiger (who prepared the social study report) stated that Daniel told her, "Daddy made me touch his peepee."

Daniel also said he "has seen his daddy put water in Melissa's butt," and "his daddy puts his hand in Melissa's peepee." Melissa told Neidiger her father "puts his peepee in her mouth" and "in her peepee" and "puts his fingers in her peepee." When Neidiger asked Melissa to show where Charles touched her, she touched her genital area.

C. *The Social Study Report of December 9, 1991*

An addendum social study report, dated December 9, 1991, indicated that the results of medical examinations did not prove or disprove sexual abuse. Melissa had been examined by a physician on October 23, but the examination "was essentially negative except for some redness in the vaginal and anal areas." When all three children were examined at a clinic on November 19, Melissa had no irritation or redness. On the latter occasion, however, Daniel pointed to his rectal area and said, "My daddy hurt me there."

D. *The Social Study Report of December 23, 1991*

A subsequent addendum social study report, dated December 23, 1991, related statements made by Melissa and Daniel to an employee of the public defender's office, Tracy Poe, on October 18. Melissa told Poe, "Daddy touched my peepee." When Poe asked whether her father had "put his peepee in her peepee," Melissa indicated yes. Melissa also said her father "put his peepee in her mouth to eat," and then made an "O" shape with her mouth. Daniel told Poe, "Daddy touched Melissa's peepee," indicating that Charles had used his index finger.

The December 23 report also provided more detail on the examinations of November 19, identifying the physician as Dr. James T. Williams and stating Daniel told him, "My daddy hurt me there."

E. *The Jurisdictional Hearing*

At the jurisdictional hearing, held on December 27, 1991, Daniel and Melissa were examined for the purpose of determining their competency to testify, specifically their capability of understanding the duty of a witness to tell the truth. (Evid. Code, § 701, subd. (a)(2).)

1. *Daniel's testimony.*

When Daniel was asked "Do you know what the truth is?" and "Do you know what a lie is?" he answered "No." When asked "Is it good to tell lies or bad to tell lies?" he answered "It's good to tell lies." When asked "What

does the truth mean?" he replied "I don't know." When asked if he was afraid of the judge he said "Yes." Later, when the judge asked whether Daniel wanted to talk to her and Daniel indicated he did not, the judge asked whether this was because she was a stranger and Daniel replied "Yeah." Repeated efforts to learn whether Daniel understood the meaning of the truth or to get him to speak more freely were unsuccessful.

### 2. Melissa's testimony.

Melissa's testimony was even less helpful. The examination never got beyond a basic level, and she was not questioned at all as to her understanding of the duty to tell the truth.

### 3. Admission of the social study reports.

The court excluded any testimony by Daniel or Melissa, concluding, "Neither child was able to establish that he or she understood the duty to tell the truth." The social services agency was left to rely on the children's hearsay statements in the social study reports, which counsel argued were made admissible by *In re Malinda S.* (1990) 51 Cal.3d 368 [272 Cal.Rptr. 787, 795 P.2d 1244]. In that case the California Supreme Court held there is an exception to the hearsay rule permitting reliance on social study reports in jurisdictional proceedings under Welfare and Institutions Code section 300.

Charles and Eulogia objected to admission of the hearsay statements, arguing that (1) admission was precluded by the finding of incompetency, and (2) the statements were not otherwise admissible under the exception to the hearsay rule for a spontaneous statement or on the theory they were fresh complaints of sex offenses.

Counsel for the children responded that "competency today is different than competency at the time [the] statements were made. Part of the competency problem we had in court is that Daniel and Melissa are dealing with strangers that they have not gotten comfortable with. That they have become aware of the problems that this court proceeding is causing the parents, and their own lives, and have made some decisions not to speak on these subjects any more."

On January 9, 1992, the court ruled the statements were admissible under *Malinda S.* and thus it was unnecessary to determine whether they were admissible as spontaneous statements or fresh complaints.

### F. The Jurisdictional and Dispositional Orders

The court found all allegations of sexual abuse and abuse of a sibling and one allegation of failure to protect (that Melissa once came to day care with

a black eye) to be true, and concluded the children were persons described in Welfare and Institutions Code section 300. The court proceeded immediately to the dispositional hearing, declared the children to be dependent children of the court, removed physical custody from Charles and Eulogia, and approved placement in the home of the children's aunt and uncle.

## G. *The Notice of Appeal*

Charles and Eulogia filed a timely notice of appeal, specifying the finding that the children were persons described in Welfare and Institutions Code section 300. The social services agency suggests the appeal should be dismissed because the notice of appeal specifies the jurisdictional finding instead of the dispositional order, and only the latter is appealable. (See *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112 [240 Cal.Rptr. 445].) A notice of appeal, however, is to be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 1(a).) Liberal construction is particularly appropriate here because the jurisdictional finding and dispositional order were rendered simultaneously on January 9, 1992—the date specified in the notice of appeal—and are reflected for each child in a single written order. We shall therefore construe the notice of appeal as properly specifying the dispositional order. (*In re Tracy Z., supra*, 195 Cal.App.3d at p. 112.)

## III. Discussion

Charles and Eulogia contend that in light of the court's competency determination it was error to admit the children's hearsay statements contained in the social study reports.

## A. *The Decision In Basilio T.*

This issue was squarely addressed in *In re Basilio T.* (1992) 4 Cal.App.4th 155 [5 Cal.Rptr.2d 450], which was decided some two months after the jurisdictional and dispositional hearings in the present case. In *Basilio T.* the juvenile court, relying on *Malinda S.*, admitted a minor's statements in a social study report despite having found the minor was not competent to testify due to inability to distinguish between the truth and a lie. (*Id.* at p. 161.) The appellate court held the hearsay statements were inadmissible as a result of the incompetency determination.

The Court of Appeal explained that the finding of incompetency "should have precluded *any* use by the trial court of hearsay statements made by Basilio Jr. to the social worker that were contained in the social study report. This is so even though under *Malinda S.* [citation] the report itself was

admissible as well as the other hearsay contained in the report. [¶] In reaching this conclusion we apply the general rule that if a declarant would have been disqualified to take the stand by reason of infancy or insanity his extrajudicial statements must also be inadmissible." (4 Cal.App.4th at p. 166, italics in original.)

The court in *Basilio T.* acknowledged that the "key issue" was whether the child was competent at the time he made the statements contained in the social study report. However, because the finding of incompetency at the jurisdictional hearing was attributable to the child's age, it logically followed that the child was incompetent at the earlier date when he made the hearsay statements. The court concluded, "We deem Basilio Jr.'s incompetency at trial also to have existed at the time he uttered the statements to the social worker four months earlier because of the nature of the particular competency qualification at issue. Absent a showing otherwise, a young child who is unable to differentiate between truth and falsehood at trial would not have possessed that qualification at an earlier point in time." (4 Cal.App.4th at p. 167.)

The reasoning in *Basilio T.* is sound. If a child is incompetent at a given point in time by virtue of his or her youth, it can reasonably be presumed that the child was incompetent at an earlier point in time.[1]

B. *Exceptions to the Rule*

This presumption, however, is not absolute. The *Basilio T.* opinion recognized that there may be exceptions where a child is competent at the earlier date but becomes incompetent at the later date. The court gave the following hypothetical example: "[A] child, who had the requisite qualifications to be competent as a witness at the time of the initial testimony or hearsay declaration may later lose his or her testimonial capacity because of some physical trauma that renders the child unable to communicate and therefore incompetent to testify at the later date." (4 Cal.App.4th at p. 167.)

An actual example is *People* v. *Liddicoat* (1981) 120 Cal.App.3d 512 [174 Cal.Rptr. 649]. In that case, after a child was found incompetent to testify at trial, the judge admitted the child's prior testimony at a preliminary hearing where the magistrate had found the child competent, the judge concluding that the magistrate's competency determination was supported by sufficient evidence. The appellate court affirmed, holding the finding the child was

---

[1]In the present case the competency qualification at issue was the children's ability to understand the duty to tell the truth, whereas in *Basilio T.* it was the ability to distinguish between the truth and a lie. (*In re Basilio T., supra,* 4 Cal.App.4th at p. 167 & fn. 7.) For present purposes, however, the distinction is inconsequential, since in both instances the lack of competency is age-based.

incompetent at trial "did not resolve the factual question whether she was qualified at the preliminary examination two months earlier." (*Id.* at p. 515.) It was appropriate for the trial court to defer to the magistrate's factual determination as to earlier competency because the magistrate had been in the better position to observe the child's demeanor at that time. (*Ibid.*)

*Basilio T.* and *Liddicoat* are not at odds. The presumption in *Basilio T.* —that a child found incompetent to testify was incompetent at an earlier point in time—was said to have effect "[a]bsent a showing otherwise." (*In re Basilio T., supra,* 4 Cal.App.4th at p. 167.) There was such a showing in *Liddicoat,* made at the preliminary hearing.

## C. *The Rebuttable Presumption*

In effect, the court in *Basilio T.* created a *nonstatutory rebuttable presumption* arising from a determination of a child's incompetency to testify. (See 1 Witkin, Cal. Evidence (3d ed. 1986) Burden of Proof and Presumptions, § 220, p. 175 [provisions of Evidence Code expressly recognize power of appellate courts to create presumptions].) "A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (a).) Here, the established fact is incapability at the jurisdictional hearing to understand the duty to tell the truth. The assumed fact is such incapability at an earlier point in time. Because the court in *Basilio T.* "deemed" the assumed fact (4 Cal.App.4th at p. 167), the assumption was required to be made, making this a presumption rather than an inference which "may" be drawn. (Evid. Code, § 600, subd. (b).)

The *Basilio T.* presumption is subject to "a showing otherwise" (4 Cal.App.4th at p. 167) and is thus rebuttable. (Evid. Code, § 601.) Because the presumption implements no public policy other than to facilitate the determination of the action, it is a presumption affecting the burden of producing evidence, not a presumption affecting the burden of proof. (Evid. Code, §§ 603, 605.) This means that once the presumption arises, the judge must assume earlier incompetency unless and until evidence is introduced which would support a finding of competency, in which event the judge determines competency without regard to the presumption. (Evid. Code, § 604.)

## D. *Application in the Present Case*

Here, the effect of the *Basilio T.* presumption is as follows:

Charles and Eulogia, as the objecting parties, had the burden of proof, by a preponderance of the evidence, that the children were incompetent when

they made the hearsay statements. (*People* v. *Farley* (1979) 90 Cal.App.3d 851, 868-869 [153 Cal.Rptr. 695, 12 A.L.R.4th 301].) However, the finding of incompetency to testify at the jurisdictional hearing raised a presumption of earlier incompetency. This shifted to the opposing parties—the social services agency and the children—the burden of producing evidence that would support a finding of earlier competency.

Had the social services agency and the children met their burden of producing evidence, the judge would have been required to determine competency without regard to the *Basilio T.* presumption. With the evidence of competency in conflict, and with Charles and Eulogia having the ultimate burden of proof, the judge would have been required to find the children were competent at the time they made the hearsay statements unless Charles and Eulogia established otherwise by a preponderance of the evidence. (*People* v. *Farley, supra,* 90 Cal.App.3d at p. 869.)

At the jurisdictional hearing, counsel for the children presented a plausible argument in favor of a finding of earlier competency, contending the children were reticent at the hearing because they "are dealing with strangers that they have not gotten comfortable with" and "have made some decisions not to speak on these subjects any more." The social services agency repeats this argument on appeal, adding that the children were capable of telling the truth to their day-care providers—who were the main sources of the hearsay statements—because of a long-term and trusting relationship. The court's comments in conjunction with the competency determination dovetail with this argument; the judge did not specifically find the children were incapable of understanding the duty to tell the truth, but merely said "[n]either child was *able to establish* that he or she understood the duty to tell the truth." (Italics added.)

The social services agency and the children did not, however, *produce evidence* to support a finding of earlier competency. This omission is understandable, since the *Basilio T.* presumption had not yet been created. Nevertheless, the absence of such evidence compels reversal. The admission of the hearsay statements in the social study reports is not supported by evidence of competency at the time the statements were made; because competency is a preliminary fact that must be determined by the trial judge (Evid. Code, § 405; *People* v. *Liddicoat, supra,* 120 Cal.App.3d at pp. 514-515) we may not independently decide the competency question on appeal.[2]

### E. *The Appropriate Disposition*

Where does this leave us? Do we simply reverse the judgment, leaving the action in a posture for retrial, or is some alternative disposition appropriate?

---

[2]Similarly, we may not independently decide the claim in the opening brief that the children were "contaminated" as a result of suggestive interrogation by Carol Keene. This was a

If, as is claimed, the children understood their duty to tell the truth in their long-term and trusting relationships with their day-care providers, so that the children were competent when they made the hearsay statements to Keene and Stortz, then those hearsay statements were admissible. The statements by each child were compelling and amply supported the jurisdictional and dispositional orders, rendering harmless any error in the admission of other hearsay statements. If such competency on the part of either child can be established on remand, a full retrial will be unnecessary, as the admissible evidence will adequately support the orders.

No similar theory is asserted to support admission of the hearsay statements to the child welfare workers or the employee of the public defender's office. However, such a theory might be developed on remand. If so, the same result will obtain, as the statements to any one of those persons were equally compelling.

Thus, the pivotal question that must be determined on remand is whether the children were competent when they made any of the implicating hearsay statements in the social study reports. Because of the *Basilio T.* presumption, the social services agency and the children will have the burden of producing evidence of such competency, but if they sustain this burden as to either child (e.g., through testimony by Keene or Stortz indicating the child understood the duty to tell the truth to them) the presumption will disappear and the judge will be required to find the child competent unless Charles and Eulogia establish otherwise by a preponderance of the evidence. If there is a finding of competency as to either child, further proceedings will be unnecessary, and the original jurisdictional and dispositional orders should be reinstated on the ground they are supported by substantial evidence.

Because of the possibility that a full retrial might not be necessary, the most appropriate disposition is to reverse the jurisdictional and dispositional orders but remand the cause with directions to the juvenile court to determine the question of competency when the children made any of the implicating hearsay statements and to reinstate the orders if the court finds that either child was competent. (See Code Civ. Proc., § 43 [appellate court may direct a new trial or "further proceedings to be had"].)

F. *Admissibility as Spontaneous Statements or Fresh Complaints*

In addition to its theory of competency, the social services agency argues that some of the hearsay statements in the social study reports were

---

question of fact for the trial judge to decide. The judge inferably rejected this theory, and the evidence does not as a matter of law compel a contrary determination.

admissible under the exception to the hearsay rule for a spontaneous statement (Evid. Code, § 1240) and on the theory they were fresh complaints of sex offenses (e.g., *People* v. *Fair* (1988) 203 Cal.App.3d 1303, 1307 [250 Cal.Rptr. 486]). Admissibility under these theories does not require competency of the hearsay declarant (*In re Basilio T.*, *supra*, 4 Cal.App.4th at pp. 166-167; *People* v. *Orduno* (1978) 80 Cal.App.3d 738, 745 [145 Cal.Rptr. 806]) and thus does not require a finding of earlier competency as to Daniel or Melissa. These are separate theories of admissibility, independent of the *Malinda S.* hearsay exception for social study reports and the *Basilio T.* requirement of competency.

■ Fresh complaint evidence is admissible only to show that a complaint was made by the victim, not for the truth of the matter stated. (*People* v. *Fair*, *supra*, 203 Cal.App.3d at p. 1307.) Thus, the fresh complaint theory cannot alone support these jurisdictional and dispositional orders. Absent competency, such support must come from the spontaneous statement theory.

■ Admissibility under the spontaneous statement exception requires that the statement was made "under the stress of excitement." (Evid. Code, § 1240, subd. (b).) "[T]he utterance must have been [made] before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." (*People* v. *Poggi* (1988) 45 Cal.3d 306, 318 [246 Cal.Rptr. 886, 753 P.2d 1082].) The fact a statement was made in response to questioning (as happened here) does not render the statement nonspontaneous if the questioning was simple and nonsuggestive. (*Id.* at pp. 319-320.)

Here, the social study reports contain no indication as to when the claimed instances of sexual abuse occurred or whether the children were still in a dominating state of nervous excitement when they made the hearsay statements. Thus, on the present record, there is no basis for concluding the hearsay statements were admissible under the spontaneous statement theory.

If, however, the social services agency and the children can demonstrate such admissibility on remand as to any of the implicating hearsay statements (e.g., through testimony by Keene indicating that the children were in a dominating state of nervous excitement when they made the statements), then, as with a competency finding, no further proceedings will be necessary and the orders should be reinstated in light of the compelling nature of the implicating statements. Thus, in addition to directing a competency determination on remand, it is also appropriate to direct a determination of admissibility under the spontaneous statement exception. If the court determines

that any implicating hearsay statements are admissible because of either competency or spontaneity, the jurisdictional and dispositional orders should be reinstated. Otherwise, if no implicating hearsay statements are found admissible, our judgment must remain in effect as an unqualified reversal, leaving the action in a posture for full retrial if sought by the social services agency. (See *Lewis* v. *Upton* (1984) 151 Cal.App.3d 232, 236 [198 Cal.Rptr. 494]; *Weightman* v. *Hadley* (1956) 138 Cal.App.2d 831, 836 [292 P.2d 909].)

## G. *The Request for Judicial Notice*

Finally, Charles and Eulogia ask us to take judicial notice of a current controversy, reflected in case law and scientific literature, regarding the theory of "child sexual abuse accommodation syndrome." The opposing parties have not, however, relied on this theory, either below or on appeal. Judicial notice is therefore unnecessary.

## IV. DISPOSITION

The jurisdictional and dispositional orders are reversed and the cause is remanded with directions to the juvenile court to conduct further proceedings, and receive such additional evidence as the court may deem necessary, to determine (1) whether Daniel and Melissa were competent (i.e., capable of understanding the duty to tell the truth) at the time they made any of the hearsay statements contained in the social study reports, and (2) whether any of the implicating hearsay statements are admissible under the spontaneous statement exception to the hearsay rule. If the court determines that either child was competent or that any implicating hearsay statements are admissible under the spontaneous statement exception, the court shall reinstate the jurisdictional and dispositional orders. If the court determines that neither child was competent and no implicating hearsay statements are admissible, this judgment shall remain in effect as an unqualified reversal. Appellants shall recover their costs on appeal.

Haning, J., and Walker, J.,* concurred.

A petition for a rehearing was denied November 30, 1992.

*Judge of the Napa Superior Court sitting under assignment by the Chairperson of the Judicial Council.