[No. D019134. Fourth Dist., Div. One. Dec. 2, 1993.]

In re CLARA B., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
VINCENT B., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**TODD, J.**—Vincent B., the father of Clara B., appeals a judgment under Welfare and Institutions Code[2] section 300, subdivisions (b) and (d), declaring Clara a dependent of the San Diego County Juvenile Court. With respect to a finding that he sexually abused Clara, Vincent raises insufficiency of the evidence arguments, including the arguments it was error to admit hearsay statements made by Clara because the court found Clara incompetent to testify at trial and the opinion testimony of Clara's therapist that Vincent was the perpetrator. Vincent also contends the trial court erred in removing custody of Clara from him and restricting his visitation of her.

---

[2]All subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

## FACTS

Vincent met Linda L. in 1987, and they were married shortly thereafter. Their daughter, Clara, was born on October 25, 1988. Vincent and Linda lived together until Clara was nine months old. In September 1990, Vincent and Linda agreed by stipulated order they would share joint legal custody, Clara's primary residence would be with Linda and Vincent would have visitation with Clara on alternate weekends and holidays as well as Tuesdays and Thursdays.

On October 24, 1992, Vincent picked Clara up from Linda's house at approximately 1 p.m. Vincent and Clara spent the afternoon eating lunch at McDonald's, watching cartoons in his house, visiting with a friend of Vincent and going to his roommate's equipment yard. Then, Vincent and Clara went grocery shopping with Vincent's roommate. Upon leaving the supermarket, Clara attempted to get into the driver's side of Vincent's pickup truck, but slipped and fell backwards to the ground, landing on her buttock. Clara immediately began to cry, holding onto her vaginal area with her hand. Vincent picked up her dress and saw a blood spot on her underwear. Vincent took Clara to his house, where he examined her further and then took her to the emergency room at Palomar Hospital. Dr. Charles Monjion, the attending physician, noted that Clara had "[c]ontusions, abrasions, and superficial lacerations of the skin of the external vagina entroitus and swelling and contusions of the skin adjacent and posterior to the urethra." Monjion requested the sheriff's department order an evidentiary examination because he believed Vincent's statements regarding the fall were not consistent with the injury. The sheriff's deputy who was called to the hospital refused to authorize the evidentiary exam or sign a blank juvenile court petition affidavit that would allow the child protective services social worker to take custody of Clara, in part because he could not talk to Clara, who was asleep and could not be awakened at that time, and determine if a crime had taken place. Clara was detained at Casa de Amparo from October 25, 1992, to October 28, 1992, when she was released to Linda's care.

On October 27, 1992, Clara was examined by Dr. Marilyn Kaufhold at Children's Hospital. Kaufhold observed a fresh abrasion approximately one millimeter in diameter on the hymen, and a slightly thickened and rounded hymen edge. Kaufhold believed the abrasion was traumatic in nature and chose to examine Clara a second time for further assessment. The second examination took place on November 10, 1992, when Kaufhold observed the abrasion had healed and Clara continued to have an irregular hymen margin. Based on the two examinations, Kaufhold opined the abrasion was caused by

trauma, most likely by "some type of object attempting to penetrate into the hymen." Kaufhold said there was 99 percent chance the injury was caused by penetration. Kaufhold said it was unlikely Clara had penetrated herself. Kaufhold also said the injury was unlikely to have resulted from an accidental fall. The fact that the injury had healed between the first and second examinations was evidence of recent injury prior to the first examination, probably within the preceding two or three days. Kaufhold also examined Clara's anus on both occasions. At the first examination, Clara's anus opened spontaneously to a diameter of about one and one-half centimeters, with stool present right inside the opening. At the second examination, the anus dilated to about two centimeters, with no stool present; this was strongly suggestive of prior history of penetration to the anus, according to Kaufhold.

On October 27, 1992, the department of social services (Department) filed a petition in juvenile court, alleging Clara was a child in need of juvenile court protection pursuant to section 300, subdivision (d), because Vincent had sexually abused her, including but not limited to vaginal and anal penetration. The petition was amended on January 6, 1993, to add a failure to protect allegation pursuant to section 300, subdivision (b), and to add a second count to the section 300, subdivision (d), allegation that detailed Kaufhold's medical findings, but did not name a perpetrator.

On October 29, 1992, social worker Georginna Mace talked to Linda, who said she found it difficult to believe Vincent could have molested Clara. As time went on, Linda became increasingly convinced that Clara had been molested based on things Clara said and did and past incidents Linda had recalled about Clara's seemingly erotic behavior. For example, on November 7, 1992, Linda saw Clara take off her pants and underwear and get on the couch next to a male family friend and spread her legs. On December 26, 1992, when Linda was doing stretching exercises, Clara bent over and licked her buttock; when Linda asked Clara where she learned that, Clara responded it was the "kiddie game" she played with her father. Also, in June 1992, Clara picked up a cucumber and told her mother to put it up her butt.

On October 29, 1992, Clara began therapy with Jaclynn Gang, a licensed clinical therapist, whom the court qualified as an expert in the treatment of victims and perpetrators of child sexual abuse. In working with Clara, Gang used gestalt therapy, in which the child is allowed to play and go through the therapy process spontaneously and naturally dealing with whatever is bothering her, with very little questioning. In Clara's play, she usually would pick an adult animal and a child animal and the adult animal would hurt the child animal. Clara would be angry with the child animal. Other times, Clara

would put the head of the smaller doll between the legs of the larger doll and pump it up and down. At a January 29, 1993, session, Clara reported to Gang that Vincent had made her touch his penis.

Vincent denied ever inappropriately touching Clara. Vincent also presented witnesses who said he is a caring individual who loves his child and the child has never displayed a fear of Vincent.

From December 1990 to March 1991, Vincent was in Alaska working on a fishing boat. On March 1, 1991, Linda made a referral to child protective services, claiming Vincent had given alcohol to Clara, when she was three months old. According to Vincent, he had rubbed wine on Clara's gums while she was teething in a restaurant because they did not have any teething medication with them. Vincent said Linda filed the report on the advice of her then live-in boyfriend, Bruce, because Vincent was returning from Alaska, Linda was fearful of him and wanted to "have one up" on Vincent by involving child protective services.

In October 1991, Linda contacted Vincent and told him she and Bruce had broken up and she needed help because she had hit Clara. Vincent took Linda and Clara to the hospital, where a referral to child protective services was made. Child protective services kept Clara overnight and then released her to Vincent. Shortly thereafter, Vincent and Linda began living together again. After three months, Vincent moved out. During the next couple of months, Linda refused to let Vincent see Clara. In May 1992, Linda contacted child protective services after Clara, while visiting her aunt, had told her aunt to put a banana "in her butt, and make it hurt." In July 1992, the family court ordered Vincent was to have the same custody and visitation as the parties had stipulated to in September 1990.

Vincent testified he took Clara to the emergency room on October 24, 1992, after the fall because of the blood and his past unsatisfactory dealings with child protective services.

At the jurisdictional hearing on February 19, 1993, the juvenile court, after voir dire, disqualified Clara as a witness. The court said, "[I]n light of her testimony here today, the court can find that it doubts seriously whether she understands she had the duty to tell the truth as a witness and that she . . . was unable to express herself on the issues that are raised in the petition." At the continued jurisdictional hearing on February 26, 1993, another attempt was made to qualify Clara as a witness. This time the hearing was conducted in chambers pursuant to section 350. Again, the juvenile court ruled Clara did not qualify as a witness, remarking in part "the

court still has a serious concern as to whether or not she understands that she has an obligation to tell the truth."

At the conclusion of the jurisdictional hearing, the juvenile court found the allegations contained in the section 300, subdivision (b), portion true by clear and convincing evidence. The court on its own motion amended by interlineation the first count of the section 300, subdivision (d), allegation to read as follows: "On, about and between January, 1991 and 10/24/92, the child's father . . . , Vincent [B.], sexually abused said child." The court then found the allegations contained in the section 300, subdivision (d), portion of the petition true by a preponderance of the evidence. After commenting on the conflicts in evidence, the juvenile court remarked: "On balance, when the court draws inferences from all of the evidence, the court knows, or is convinced that the minor has been molested. The court does not know exactly what happened, and I don't know that anyone, other than Clara and the father and/or the perpetrator, may know exactly what happened. But there is a preponderance of the evidence to support the [sexual abuse] allegations . . . ."

At the June 10, 1993, dispositional hearing, the Department recommended (1) Clara be placed with Linda, (2) Clara have no contact with Vincent, (3) Clara and Linda continue in therapy, (4) Vincent would have to show he was involved in the Parents United Program before any visitation would be possible. Vincent submitted on the Department's recommendation and made no argument.

After declaring Clara a dependent and finding Linda did not pose a substantial risk of danger to Clara, the juvenile court placed Clara with Linda. The juvenile court then adopted Linda's proposed order for filing in the family court proceedings and terminated dependency jurisdiction. The order gave physical and legal custody to Linda and supervised visitation to Vincent upon agreement of Clara's therapist in consultation with Vincent's therapist.

DISCUSSION

I

In support of his contention that the evidence was insufficient to support the finding that he sexually molested Clara, Vincent argues it was error (1) to use Clara's statements for any purpose since she was found incompetent to testify at trial, and (2) to rely on the therapist Gang's opinion that he molested Clara. We consider these arguments seriatim.

## A.

■■ ■■ ■■ In *In re Basilio T.* (1992) 4 Cal.App.4th 155 [5 Cal.Rptr.2d 450], we addressed the issue of whether it was error to admit a child's hearsay statements contained in a social study report when that child has been found incompetent based on an inability to distinguish between the truth and a lie.[3] We held such statements were inadmissible as a result of the incompetency determination. (*Id.* at p. 166.) "This was a legitimate challenge and should have precluded *any* use by the trial court of hearsay statements made by Basilio Jr. to the social worker that were contained in the social study report." (*Ibid.*, original italics.)

Here, we are asked to clarify our holding in *Basilio T.* Vincent argues the case stands for the proposition that once a juvenile court determines a minor is not competent to testify, the court must totally disregard the minor's statements and not use them for any purpose. Vincent is wrong. In *Basilio T.*, we were addressing the use of hearsay statements by minors found incompetent. (4 Cal.App.4th at pp. 164-168.) Hearsay statements are only those "offered to prove the truth of the matter stated." (Evid. Code, § 1200.) To the extent that our opinion lacks clarity on this point,[4] we take this opportunity to clear up the matter: *Basilio T.* stands for the proposition that a child's incompetency based on an inability to distinguish between the truth and falsehood renders the child's *hearsay* statements in a social study report inadmissible. As a later opinion issued by the Second Appellate District put it: "[T]he *Basilio T.* court found that the nature of the particular infirmity articulated by the court in finding Basilio [Jr.] incompetent struck at the foundation upon which a hearsay statement may be designated an exception and admissible—that is, the reliability of the hearsay statement at issue." (*In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1043 [17 Cal.Rptr.2d 643].)

■■ Here, the juvenile court correctly interpreted *Basilio T.*, ruling that Clara's out-of-court statements would be inadmissible for the truth of the matters asserted but could be admitted for purposes other than the truth of the matters asserted. The question remains whether the juvenile court correctly applied *Basilio T.* in admitting some of Clara's out-of-court statements. Specifically, the court ruled as follows: "There were statements made

---

[3]Here, the incompetency finding was based on the child's inability to understand the duty to tell the truth, whereas in *Basilio T.* it was the inability to distinguish between the truth and a lie. (*In re Basilio T., supra,* 4 Cal.App.4th at p. 167 and fn. 7.) This distinction is of no moment in applying the principles of *Basilio T.* (Accord, *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1018, fn. 1 [13 Cal.Rptr.2d 139].)

[4]See, for example, language at 4 Cal.App.4th at page 168 ("Having determined it was error to consider Basilio Jr.'s comments contained in the social study report in any fashion, . . ."). This sentence was intended to summarize the holding we had already announced concerning the use of hearsay statements (4 Cal.App.4th at p. 166) and was not intended as a blanket exclusionary rule.

by the minor to the mother regarding behaviors by the minor with the puppy; the minor's explanation of the kiddie game; the minor's statements regarding a banana, a cucumber, which were received at the time on the issue of what the mother's belief and understanding were about whether or not the minor was molested.

"The reason that was relevant is, it's important to see what the mother's belief and understanding was in that regard so as to gauge what, if anything, she perceived was appropriate to protect the minor prospectively.

"The behaviors, which were reported by various individuals, including Dr. Gang and the mother—namely, the sexualized behavior with dolls and animals where the minor put the head of the small doll in between the legs of the larger doll and other sexualized behavior, such as described by the mother which took place on November 7th, where the minor took her pants and spread her legs for an adult male at her home—these sexualized behaviors were statements in essence. They were nonverbal conduct. They are received for the limited purpose of showing that the minor does apparently have sexual knowledge, which she is too young to have under ordinary circumstances.

"The minor has made a number of statements about her daddy. She has made statements to Dr. Gang with respect to 'my daddy hurt me; I can't tell, my daddy doesn't want me to. He made me touch . . . his penis'—that category of statements will be received for the limited purpose of showing the minor's fear of her father.

"Statements made by the minor between December 26th, 1992 to March 22nd, 199[3], to the mother will also only be received as to the limited issue of the minor's perception of fear of her parent and her mental state."

▪ With regard to the admission of Clara's out-of-court statements for the first articulated purpose—the mother's understanding of whether Clara was molested—there was no error; this was a permissible nonhearsay purpose since the petition named Linda as well as Vincent and included an allegation under section 300, subdivision (b).

▪ With regard to the second articulated purpose—Clara's precocious sexual knowledge—it tends to prove there was molestation; therefore, notwithstanding the trial court's ruling it was admitted for a hearsay purpose. In *In re Christie D.* (1988) 206 Cal.App.3d 469, 480 [253 Cal.Rptr. 619], the Court of Appeal rejected an argument that evidence of a minor's play with anatomically correct dolls was offered only to show the "state of mind" of

the young victim. "[E]vidence of Christie's precocious knowledge could only have been relevant if offered to prove the fact alleged in the petition—sexual abuse. . . . [¶] In other words, evidence of Christie's precocious sexual knowledge had no relevance to the proceedings unless it tended in some way to prove or disprove sexual abuse." (*Ibid.*) Here, however, any error was harmless. The issue in this case was not whether Clara was molested; there was ample uncontroverted medical evidence that she was. The issue was who committed the molestation. Thus, the evidence of Clara's precocious sexual knowledge was cumulative to the properly admitted medical evidence that she had been molested.

 The third articulated purpose for allowing Clara's out-of-court statements—to show she feared her father—also constitutes an impermissible hearsay purpose. Evidence of Clara's fear of Vincent could only be relevant if offered to prove the contested fact alleged in the petition—that Vincent molested her. ██ ██ Clara's fear of Vincent had no relevance to the jurisdictional portion of these proceedings unless it tended in some way to prove or disprove Vincent had molested her.[5]

## B.

 Vincent also contends the therapist's opinion that Vincent was the perpetrator of the sexual molest was inadmissible hearsay (see *In re Cheryl*

---

[5]However, with respect to the dispositional portion of a section 300 proceeding, such out-of-court statements indicating a minor's fear of a parent would be admissible as relevant nonhearsay evidence. As explained in *In re Dorinda A.* (1992) 10 Cal.App.4th 1657, 1662-1663 [13 Cal.Rptr.2d 139]: "There is authority for the proposition that a minor's out-of-court statements that a particular individual molested her are admissible not to prove he actually did, but as circumstantial evidence the child believed he did. In other words, these statements 'supply circumstantial evidence she had a certain state of mind, that is, a belief her father had hurt her and a dislike and fear of him based on that belief. Whether the statement is true or not is irrelevant to this use of the statement. Thus it is nonhearsay for this purpose. It is well settled that out-of-court declarations can be used as circumstantial evidence of the declarant's own state of mind. ([1] Witkin, Cal. Evidence ([3d] ed. [1986]) §§ [593-595].) This includes a declaration someone harmed her offered as circumstantial evidence of the declarant's negative attitude toward the one she believes committed this wrong against her.' (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1131 [200 Cal.Rptr. 789].) [¶] As noted by the court in *Cheryl H.*, 'The purpose of a dependency hearing is to determine the best interests of the child and to protect those interests. [Citations.] A child's belief that her father harmed her and her fear of him is relevant evidence tending to prove it is not in the child's best interest to permit his continued contact with her.' (*In re Cheryl H., supra,* 153 Cal.App.3d at p. 1132.) In this case, Dorinda verbally and nonverbally communicated her fear of appellant to her sisters, by telling them she was afraid appellant would molest her if she was left alone in the bathroom, and by crying as appellant led her into the bathroom and bedroom, where the molestations were alleged to have occurred. Dorinda's fear and dislike of appellant were relevant nonhearsay factors for the court to consider in determining the nature of appellant's future contacts with her."

*H.* (1984) 153 Cal.App.3d 1098, 1118-1122 [200 Cal.Rptr. 789], criticized on other grounds in *People* v. *Raley* (1992) 2 Cal.4th 870, 893 [8 Cal.Rptr.2d 678, 830 P.2d 712]) and also should have been excluded because it was never established that the doll play therapy that formed the basis of Gang's opinion was "accepted as reliable in the scientific community in which it was developed" under the *Kelly-Frye* test.[6]

We note that no objection to Gang's testimony in which she opined that Vincent was the perpetrator was made at the time of trial nor was a foundational objection lodged to testimony about Gang's gestalt doll play therapy under *Kelly-Frye*. It is well settled that failure to object to the admission of improper or inadequate evidence waives the right to raise the issue on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 307, p. 317; Evid. Code, § 353, subd. (a).)

Moreover, any error in admitting Gang's opinion about Vincent being the perpetrator was harmless. The juvenile court explicitly said it was not relying on the opinions of lay witnesses. Gang was not an expert in the identification of perpetrators; she qualified as an expert in the treatment of victims and perpetrators of child sexual molestation.

### C.

The question remains whether there was sufficient evidence to sustain the jurisdictional finding Vincent sexually abused Clara in light of the discussion above concerning the propriety of the juvenile court's evidentiary rulings. In other words, if Clara's out-of-court statements indicating she had a precocious knowledge of sex and feared her father were eliminated, was there substantial evidence to support the finding? We conclude there was.

" 'When reviewing a judgment based in part on excludable evidence, we first strip away the inadmissible evidence and ask whether enough admissible evidence remains to sustain the court's finding.' . . . The order must be upheld if there is any substantial evidence, contradicted, or uncontradicted, to support the judgment." (*In re Dorinda A.*, *supra*, 10 Cal.App.4th 1657, 1663, citation omitted.)

The standard of proof required in a section 300 dependency hearing is the preponderance of evidence. (See § 355.)

---

[6]*People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 Fed. 1013 [54 App.D.C. 46, 34 A.L.R. 145], questioned in *Daubert* v. *Merrell Dow* (1993) 509 U.S. __ [125 L.Ed.2d 469, 113 S.Ct. 2786].

Here, there was undisputed medical evidence that Clara had been sexually molested. As to the injury to Clara's hymen, Kaufhold opined there was a 99 percent chance that it was caused by some type of object attempting to penetrate into the hymen. Kaufhold also doubted the injury could have occurred from an accidental fall, such as suggested by Vincent's explanation. Finally, Kaufhold opined the hymen injury occurred shortly before the first examination on October 27, 1992, because it was healed by the time of the second examination on November 10, 1992. As to the injury to Clara's anus, Kaufhold opined it strongly suggested a prior history of penetration to the anus, probably more than once. Moreover, the evidence was undisputed that Clara was in Vincent's care prior to the medical reports of injury, and Vincent related a story about how the injury occurred that was not reconcilable with the type of injury Clara sustained.[7] Although the evidence is by no means overwhelming, given the deference we must accord a juvenile court's factual findings (*In re Anne P.* (1988) 199 Cal.App.3d 183, 199 [244 Cal.Rptr. 490]), we conclude there is substantial evidence even when Clara's inadmissible out-of-court statements are eliminated to support the jurisdiction finding under the preponderance of evidence standard.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Affirmed.

Work, Acting P. J., and Benke, J., concurred.

---

[7]According to Kaufhold's testimony, neither Monjion, the emergency room physician, nor Kaufhold observed any external contusions or lacerations to the outside structure of the genitalia, which would be expected from an accidental fall.

*See footnote, *ante*, page 988.