Filed 3/30/21  In re A.R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.R.,<br><br>    Defendant and Appellant. | D078097<br><br>(Super. Ct. No. J520306) |

APPEAL from an order of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Affirmed.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

M.R (Mother) appeals from a jurisdictional order of the juvenile court declaring her daughter A.R. (age two) a dependent of the court pursuant to

Welfare and Institutions Code[1] section 300, subdivision (b).  She contends that the juvenile court improperly assumed jurisdiction because the record lacks sufficient evidence showing that A.R. was at current risk of serious physical harm or illness when it assumed jurisdiction over her on October 13, 2020.  We disagree and affirm the jurisdictional order.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Mother is a juvenile court dependent.  Mother started using methamphetamine when she was approximately 12-years old.  In April 2018, at age 15, Mother gave birth to A.R.  Mother and A.R. initially lived together at Mother's group home.  Although Mother made some progress in her therapeutic and parenting services, she had several "Serious Incident Reports" at the group home involving vaping, being under the influence of marijuana, refusing emergency medical treatment, and threats and verbal altercations with other residents.

In February 2019, Mother was placed in a foster home with A.R. While there, Mother often left with A.R. and did not return or returned late at night.  Eventually, Mother left with A.R. and refused to return.  In

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]      In her notice of appeal, Mother checked the box indicating she was appealing from the order removing A.R. from her custody, but she did not check the box to request review of the section 300 jurisdictional findings. Nevertheless, Mother typed that she was appealing from the "October 13, 2020, contested adjudication and disposition hearing."  Additionally, the Agency does not argue it was misled or prejudiced by Mother's failure to check the box indicating what she was also appealing from the jurisdictional order.  Consequently, we liberally construe Mother's notice of appeal as encompassing the jurisdictional order.  (Cal. Rules of Court, rule 8.405(a)(2); *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1017.)

2

September 2019, the Agency temporarily placed Mother at Polinsky Children's Center (PCC). Mother asked the Bs—her former foster parents—to temporarily care for A.R. In October 2019, the Bs accepted A.R. into their care and Mother provided them a power of attorney that was insufficient for the Bs to meet A.R.'s need for medical care and childcare. By January 2020, A.R. was bonding to the Bs, referring to them as " 'mama' " and " 'papa.' "[3] Despite their interest in adopting A.R. or a legal guardianship, the Bs notified the Agency that they would no longer be willing to care for A.R. if Mother did not make appropriate arrangements for A.R. to receive medical care and childcare.

In the meantime, Mother reported to members of her support network that she sold drugs and prostituted herself. Mother's adult sister told Mrs. B that Mother's boyfriend beat Mother for failing to give him the money she received from "prostituting for him." Despite the beatings, Mother always returned to the boyfriend. In February, Mother started using heroin approximately three times a week. Mother agreed to be transported to a substance abuse program but left the next day and returned to PCC. At the end of February, Mother was hospitalized for heroin withdrawal. Upon her discharge from the hospital on March 1, Mother returned to PCC. About a week later, Mother left PCC without authorization, and her whereabouts were unknown leading up to the filing of the juvenile dependency petition for A.R. on March 9.[4]

---

[3]     Undesignated date references are to 2020.

[4]     Between July 2018 and March 2020, the Agency received eight child welfare referrals alleging concerns about Mother's care of A.R., including physical discipline, yelling profanities, forgetting to feed her, and possibly being under the influence of drugs and damaging property with A.R.

Although A.R. was physically safe with the Bs at that time, the Agency explained that it could not ensure her safety without juvenile court intervention.  The petition alleged A.R. was a child described by section 300, subdivision (b)(1) because a substantial risk existed she would suffer serious physical harm or illness as a result of the failure or inability of her parent to supervise or protect her adequately and/or by the inability of her parent to provide regular care for her due to the parent's substance abuse or mental illness.[5]

At the detention hearing on March 12, the juvenile court found a prima facie showing had been made that A.R. was a child described by section 300, subdivision (b), removed her from Mother's care and placed her with the Bs.  The juvenile court ordered liberal, supervised visits for Mother and advised Mother she could be limited to six months of reunification services because A.R. was under the age of three.

As a result of the COVID-19 pandemic, the court continued the jurisdiction and disposition hearing two times.  The matter was continued a third time to allow R.F., the recently located alleged father, to consult with counsel.[6]  On August 20, Mother was detained in juvenile hall after being

nearby.  One referral was evaluated out and the others were either closed as unfounded or inconclusive.

[5]     Evidence in the record shows that Mother had attempted suicide, suffers from attention deficit hyperactivity disorder or attention deficit disorder, and has a history of physically violent behaviors.

[6]     After R.F. stated that he would not participate in the case, the court relieved R.F.'s attorney but declined to strike him from the petition.  Mother reported that J.C., the man listed on A.R.'s birth certificate, was not the biological father.  J.C. did not seek a court-appointed attorney.  R.F. and J.C. are not parties to this appeal.

arrested for assault at PCC.  On September 11, Mother was placed in a group home where she displayed concerning behavior such as returning late from self-passes, refusing to participate in school and therapy, exhibiting signs of drug and alcohol use, and keeping her cellphone on at all times so that she would not " 'get in trouble with the guys.' "  Mother, however, denied any commercial sexual exploitation.

On October 13, the juvenile court held the contested jurisdiction and disposition hearing via videoconference.  The juvenile court received the Agency's reports and Mother's written, stipulated testimony into evidence.  Mother requested that the petition be dismissed.  Alternatively, Mother agreed that A.R. could remain with the Bs until she was able to reunify with A.R.  The juvenile court declared A.R. to be a dependent child, removed her from Mother's custody, maintained A.R.'s placement with the Bs, and ordered reunification services for Mother.  Mother timely appealed.

DISCUSSION

I. <em>GENERAL LEGAL PRINCIPLES</em>

We review the juvenile court's jurisdictional order for substantial evidence.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  In applying the substantial evidence standard of review, " ' "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.]  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' "  (*Ibid.*)  The burden of proof for jurisdictional

5

findings is preponderance of the evidence. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.)

To establish jurisdiction under section 300, subdivision (b)(1), the Agency must show: "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) The third element requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future. (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111.) Standing alone, past conduct is insufficient to establish a substantial risk of harm and "there must be some reason beyond mere speculation to believe [the past conduct] will reoccur." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564-565.)

The court, however, " 'need not wait until a child is seriously abused or injured to assume jurisdiction' " and "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) " 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' " (*Ibid.*) On appeal, the parent has the burden of showing that there is insufficient evidence to support the juvenile court's jurisdictional findings. (*Ibid.*)

## II. *ANALYSIS*

Mother contends that the record lacks substantial evidence to support jurisdiction under section 300, subdivision (b), because there was no current risk of substantial harm to A.R. Mother notes that by the time of the contested hearing, A.R. had Medi-Cal coverage and that the Bs had a power of attorney and a copy of A.R.'s birth certificate. Mother argues that she

6

intends to leave A.R. with the Bs and that her history of leaving her placements presented no risk of harm to A.R. because the Bs had everything they needed to care for A.R. in the event she was unavailable. Analogizing her situation to *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 (*Destiny S.*), Mother asserts that her drug use did not put A.R. at current substantial risk of physical harm because she never used drugs in A.R.'s presence or cared for A.R. while under the influence. Accordingly, Mother contends that the jurisdictional order should be reversed, and all subsequent orders vacated as moot.

The Agency responds that in the absence of juvenile court intervention, the Bs would have no legal authority to set rules regarding Mother's contact with A.R. or prevent Mother from exercising her custodial rights anytime she wished, and that this created a substantial risk of harm. We agree with the Agency.

We acknowledge that at the time of the contested hearing A.R. had Medi-Cal coverage. The record reflects, however, that Mrs. B took Mother to the Medi-Cal office in January 2020 after asking Mother to provide A.R.'s Medi-Cal card since October 2019. The record also shows that Mother has refused treatment for her substance abuse and refused mental health resources from the hospital. Conceding that A.R. was " 'too much for her,' " Mother asked the Bs to care for A.R. "temporarily." We commend Mother for recognizing her inability to care for A.R. and seeking the Bs' assistance. This informal arrangement, however, does not eliminate the need for juvenile court intervention.

Mother provided the Bs with a power of attorney that authorized them to travel with A.R. and make educational and medical decisions. The power of attorney expired on January 10, 2021. Moreover, even if Mother extended

7

the power of attorney, she could revoke it at any time. Thus, A.R. remains at risk of returning to Mother's care despite indisputable evidence showing that Mother is currently unable to safely parent A.R.

Parents, such as Mother, who are aware of their unfitness may arrange a probate guardianship to allow another person to temporarily or permanently care for their children. (See *Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1536-1537.) Guardianship enables parents to place their children in a safe place while "avoid[ing] the involvement of the county child welfare agency." (*Id.* at p. 1536; see also *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1122 [describing differences between a probate guardianship and a dependency proceeding].) Mother, however, refused to allow the Bs to become A.R.'s legal guardians and, by the time of the contested hearing, still characterized A.R.'s placement with the Bs as temporary until she was able to care for A.R.

Although Mother claimed in her stipulated testimony that there was no need for juvenile court intervention because she would not remove A.R. from the Bs' care, the juvenile court implicitly rejected this testimony and we will not second-guess the court's evaluation of Mother's credibility. (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043 ["A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so."].) Notably, Mother has exhibited emotional lability on the topic of her ability to care for A.R. During a conversation with the social worker on March 5, Mother acknowledged that she "was not safe" for A.R., but also stated she made a "mistake" giving A.R. to the Bs. The following day, she told the social worker that she believed "she [was] ready to take care of [A.R.] now." Thus, at the time of trial a risk existed that Mother would impulsively conclude that she could care for A.R. herself despite her untreated substance

abuse.  Without juvenile court intervention or a guardianship, Mother had the right to remove A.R. at any time from the Bs permanently or for extended visits.

For a child of "tender years," such as A.R., a finding of substance abuse is prima facie evidence of the inability of a parent to provide regular care, resulting in a substantial risk of physical harm.  (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219, 1220 [children six years old or younger are of tender years].)  This relationship between substance abuse and resulting substantial risk of physical harm rests on the reasonable proposition that children young enough to need constant supervision face an " 'inherent' " and substantial risk of serious physical harm if their caregiving parent is engaged in activity that renders the parent less capable of providing the requisite supervision.  (*Id.* at p. 1216.)  At the time of the contested hearing, Mother had an unresolved substance abuse problem that placed A.R. at substantial risk of harm should she remove A.R. from the Bs or visit A.R. while intoxicated.  Accordingly, we conclude that the juvenile court did not erroneously exercise dependency jurisdiction.[7]

---

[7]    Mother's reliance on *Destiny S.*, *supra*, 210 Cal.App.4th 999 for the proposition that a parent's drug use, without more, does not provide a basis for dependency court jurisdiction is misplaced because *Destiny S.* involved an eleven-year-old child who " 'was old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life.' "  (*Id.* at p. 1004.)

DISPOSITION

The jurisdictional order is affirmed.


BENKE, Acting P. J.

WE CONCUR:



HUFFMAN, J.



DATO, J.

10