Filed 11/18/20  In re K.B. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | B305177 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>V.B.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP06044A) |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

V.B. (Grandmother), the paternal grandmother of infant K.B., appeals from a dependency court parental rights termination order.  Grandmother argues the Los Angeles County Department of Children and Family Services (the Department) did not properly assess her as a possible placement for K.B.  Specifically, we are asked to decide whether the Department should have done more to assess Grandmother when she expressed conditional interest in taking custody of K.B. and whether the Department adequately assessed Grandmother after she later expressed unequivocal interest in having K.B. placed with her.  We also consider whether the juvenile court exercised independent judgment in applying the relative placement preference.

## I.  BACKGROUND
### A.      *Initial Dependency Proceedings*
K.B. was born in September 2018.  Within days, the Department received two calls expressing concerns about her welfare.  The first caller reported K.B. and her mother S.B. (Mother) were ready for discharge from the hospital and Mother appeared to be emotionally unstable.  Both Mother and K.B. tested positive for marijuana, but K.B. did not exhibit signs of withdrawal.  The second caller reported a domestic violence incident at the hotel where Mother and K.B. stayed after leaving the hospital.

The Department temporarily detained K.B. from Mother and Father and filed a dependency petition alleging K.B. was subject to the juvenile court's jurisdiction under Welfare and

3

Institutions Code[1] section 300, subdivisions (a) and (b).  The five-count petition alleged domestic violence between Mother and Father, the parents' use of marijuana, and Father's untreated mental and emotional problems put K.B. at substantial risk of serious physical harm.

The juvenile court detained K.B. and ordered monitored visitation for both parents.  The court also ordered the Department to assess all K.B.'s identified relatives as possible placement options.  Later in November 2018, the court sustained all counts of the dependency petition and ordered family reunification services for Mother and Father.

### B.  Consideration of Grandmother as a Placement Option

In July 2019, the juvenile court found Mother and Father had not substantially complied with their case plans, terminated reunification services, and set a section 366.26 permanency planning hearing.

In a report submitted in advance of that hearing, the Department reported K.B. was "thriv[ing]" in the care of her foster parents, who were also the prospective adoptive parents.  She had developed a "strong attachment" to them and called them "mama" and "papa."

At the section 366.26 hearing in February 2020, Father argued the juvenile court should not terminate his parental rights because Grandmother was available to take custody of K.B.  The juvenile court heard testimony from Grandmother and continued the hearing so it could "take a closer look" at the

---

[1]  Undesignated statutory references that follow are to the Welfare and Institutions Code.

4

Department's assessment of Grandmother, allow the Department to gather more information, and call a social worker to testify.

In advance of the continued hearing date, the Department submitted a report summarizing its communications with Grandmother.[2] As detailed in the report, a dependency investigator recalled that earlier in the dependency proceedings, Grandmother was deemed an unsuitable placement because Mother did not want K.B. placed with Grandmother and Grandmother had recent criminal history, lacked stable housing, and avoided contact with the Department. The report further stated Grandmother remained an unsuitable placement for K.B. "due to her criminal history (substance abuse, domestic violence), inconsistent contact, housing, and reported ongoing substance abuse."

When parties appeared in court to resume the permanency planning hearing, Grandmother submitted a section 388 petition asking the juvenile court to change its previous order placing K.B. with non-relative caregivers. Grandmother also produced a notebook in which she had memorialized her communications with the Department. The juvenile court marked the notebook as a hearing exhibit.

Grandmother testified a Department social worker first called her in September 2018 and they played "phone tag" until they spoke in November 2018. Grandmother told the social

[2] The Department's report explained the social worker originally assigned to the case no longer worked for the Department and certain contacts between that social worker and Grandmother may not have been recorded. Starting in May 2019, social worker Adilene Paque (Paque) had been assigned to the case and she testified at the continued hearing.

worker she was willing to take custody of K.B., but she would "get back to" the social worker "because [she] was in the process of finding permanent housing." Grandmother understood the social worker was going to "mark . . . down that [she] was interested" in taking custody of K.B. and "[take] the information about [Grandmother's] situation."

Grandmother testified her next contact with the Department was in July 2019. When asked about a notebook entry she made in October 2018 that indicated Mother asked her (Grandmother) to let Mother and Father "handle this situation," Grandmother explained this was one of the reasons she was not more active in pursuing custody of K.B. Other reasons included her efforts to move out of transitional housing and to reunite with K.B.'s paternal uncle. In a note from March 2019, Grandmother indicated minor repairs to her new apartment "need[ed] to be addressed b4 reaching out to [the Department]."

The Department's reporting indicated a criminal background check on Grandmother was done and the results discussed with Grandmother in August 2019. Grandmother had a 2017 arrest for domestic violence, and she said it stemmed from a relationship she had ended. Grandmother also had a 2017 arrest for possession of a controlled substance, and she claimed it occurred as a result of her former partner asking her to hold drugs for him. According to the Department, Grandmother admitted she struggled with drug and alcohol addiction for years and had used crack cocaine within the past year. (Grandmother, during her testimony, disputed this and said she had not used crack cocaine in the last 30 years.) Grandmother completed a

6

substance abuse program in February 2019 and maintained she had been sober for five months.[3]

The Department's reporting also addressed Mother's position on placement of K.B. with Grandmother, Grandmother's living situation, and Grandmother's visitation with K.B. Regarding Mother's position on placement, she had been "adamant" that K.B. not be placed with Grandmother due to substance abuse issues.[4] As to housing, Grandmother had been living in a studio apartment with K.B.'s paternal uncle, and when the Department assessed Grandmother's new two-bedroom home in February 2020, there were no appliances or furniture. (The next month, Grandmother expressed frustration that social workers had not reassessed her home.) As for visitation, the Department reported Grandmother had monthly monitored visits with K.B. in August 2019, October 2019, November 2019, January 2020, and February 2020.[5]

---

[3]     Grandmother's section 388 petition attached letters stating she submitted to monthly drug tests from November 2019 through February 2020 and participated in therapy and parenting classes.

[4]     Mother claimed she saw Grandmother smoking methamphetamine in or about June or July 2019. Grandmother denied it, and months later, Mother told a social worker she was "mistaken" about having seen Grandmother using methamphetamine.

[5]     When Grandmother scheduled an extra visit for November 2019, she did not show up and did not call the Department. When the Department arranged for a video visit in March 2020, Grandmother did not initiate the visit.

Social worker Paque testified at the continued section 366.26 hearing about whether the Department would seek a criminal record exemption that would be necessary to place K.B. with her.  Paque testified she told Grandmother that the Department would not seek the exemption because Grandmother was not a suitable placement option.  (Grandmother testified the Department assured her it would seek the exemption.)

After the presentation of evidence, the juvenile court found Grandmother initially made a "conditional request" for placement in which "she indicated, essentially, . . . if all else fails, consider me."  The court further found Grandmother "stepped out of consideration and did not press the issue" because of her uncertain housing situation and K.B.'s parents' efforts to reunify with her.  The court concluded that, "in terms of [section] 361.3," the Department satisfied its placement consideration obligations.  The court remarked the Department "may have stumbled initially" when Grandmother was equivocating about placement, but then, when Grandmother indicated she was prepared to take custody of K.B., the Department appropriately considered the nature of Grandmother's relationship with K.B., her housing situation, her recent criminal history, and the allegations of recent drug use.  The court declined to change K.B.'s placement.[6]

The juvenile court determined K.B. was likely to be adopted and ordered her parents' rights terminated, finding no exception

---

[6]     With regard to Grandmother's section 388 petition to change the previous placement order, the juvenile court found it was not in K.B.'s best interest to change her placement when there had been such limited contact between her and Grandmother.

8

to the termination of parental rights applied.  Grandmother appeals from this termination order.

## II.  DISCUSSION

Section 361.3 requires the Department and the juvenile court to assess the suitability of relatives like Grandmother as placement options for a dependent child like K.B.  This relative placement preference applies only when a relative requests custody, however, and Grandmother's equivocal expressions of interest in custody before July 2019 did not constitute such a request.  The Department adequately assessed Grandmother as a placement option after July, and the juvenile court did not abuse its discretion in determining that Grandmother's housing situation, missed visits, and reported recent drug use made placing K.B. with her inappropriate.  Additionally, Grandmother's contention that the juvenile court was inappropriately deferential to the Department in assessing her suitability for placement fails in light of the juvenile court's active role in soliciting additional reports and hearing testimony from both Grandmother and a Department social worker.

> *A.    Grandmother's Notice of Appeal Authorizes Review of the Juvenile Court's Relative Placement Determination*

Grandmother filed her notice of appeal one week after the March 6, 2020, hearing at which the juvenile court declined to place K.B. with her under section 361.3, denied Grandmother's section 388 petition, and terminated Mother and Father's parental rights.  The notice of appeal indicates Grandmother is

9

appealing the following: "March 6, 2020 – Denial of 388 Petition."

Grandmother's arguments on appeal, however, do not challenge the juvenile court's findings pertinent to its ruling on the section 388 petition. (See generally *In re J.T.* (2014) 228 Cal.App.4th 953, 965 ["To prevail on a section 388 petition, the moving party must establish that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child"].) Rather, she argues the Department and the juvenile court did not properly assess her and apply the relative placement preference under section 361.3. The Department accordingly contends Grandmother's notice of appeal does not permit review of the juvenile court's section 361.3 findings.

We conclude we may reach the merits of Grandmother's arguments. The juvenile court's order regarding placement was rendered on the same date as the order denying Grandmother's section 388 petition. The juvenile court attempted to distinguish its analysis under section 361.3 from its analysis under section 388, but the two were fairly intertwined. Under these circumstances, we will construe Grandmother's notice of appeal liberally to assess the correctness of the juvenile court's section 361.3 ruling.[7] (See *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1017 ["Liberal construction is particularly appropriate here

---

[7] Alternatively, the Department contends Grandmother's appeal is untimely because K.B. was placed with her most recent caregivers in April 2019. We reject the contention. (See, e.g., *In re Isabella G.* (2016) 246 Cal.App.4th 708, 720, 723; *In re Joseph T.* (2008) 163 Cal.App.4th 787.)

10

because the jurisdictional finding and dispositional order were rendered simultaneously"].)

### B. The Juvenile Court's Finding That the Department's Assessment of Grandmother Was Adequate Is Not an Abuse of Discretion

Section 361.3 provides that when a child is "removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative, regardless of the relative's immigration status." (§ 361.3, subd. (a).) "'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).)

In determining whether a relative placement is appropriate, the Department and the juvenile court are required to consider various factors. (§ 361.3, subd. (a).) "The first and foremost of these factors is '[t]he best interest of the child, including special physical, psychological, educational, medical, or emotional needs.' (§ 361.3, subd. (a)(1) . . . .)." (*In re Maria Q.* (2018) 28 Cal.App.5th 577, 592 (*Maria Q.*).) But there are many additional factors, including the wishes of the parent, relative, and child; the "good moral character" of the relative and any other adult living in the home; the nature and duration of the relationship between the child and the relative; and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. (§ 361.3, subd. (a).) "The statute does 'not supply an evidentiary presumption that placement with a relative is in the child's best interests' but it does require the social services agency and juvenile court to determine whether

11

such a placement is appropriate" based on the relevant factors. (*In re R.T.* (2015) 232 Cal.App.4th 1284, 1295.)

Grandmother faults the Department for failing to assess her as a potential placement during two distinct periods: before and after July 2019. The juvenile court found otherwise, and we review that finding for abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067 ["the abuse of discretion standard should be applied to the review on appeal of the juvenile court's determination regarding relative placement pursuant to section 361.3"].)

As to the earlier period, Grandmother contends the Department took no steps to assess her when she expressed interest in taking custody of K.B. in November 2018. Grandmother's own testimony (as well as the contemporaneous notes in her notebook), however, undermines this argument. Grandmother told a social worker she would get back to her when she found permanent housing. Grandmother's understanding that the social worker would make a note of her interest as well as her "situation" is consistent with the Department and the juvenile court's conclusion that Grandmother felt she was not willing or able to take custody of K.B. at that time.

As to the later period, Grandmother argues the Department should have investigated whether her criminal history would preclude her taking custody of K.B., physically inspected her apartment before February 2020, and directed her to drug test when Mother alleged recent drug use.[8] Each point is

---

[8]     Grandmother also contends the Department failed to document its assessment as required under section 361.3, subdivision (a)(8)(B). This subdivision provides that "[t]hose desiring placement shall be assessed according to the factors

unpersuasive.  The availability of an exemption would not have made Grandmother's criminal history an improper consideration under section 361.3, subdivision (a).  It would only have established Grandmother's criminal history was not a dispositive factor, which the Department already assumed.  A thorough inspection of Grandmother's housing eventually would have been required to place K.B. with Grandmother, but this was not necessary to the Department's assessment under section 361.3: Grandmother told the Department she was in transitional housing in November 2018, she shared a studio apartment with her adult son in August 2019, and the larger apartment she leased in February 2020 was not yet furnished when the Department inspected it.  Finally, even if a drug test would have established Grandmother was not using drugs at the time of the test, it would neither confirm nor refute Mother's allegation in September 2019 that she saw Grandmother using drugs two or three months earlier.

---

enumerated in this subdivision.  The county social worker shall document these efforts in the social study prepared pursuant to Section 358.1." (§ 361.3, subd. (a)(8)(B).)  The Department was not required to document its assessment during the earlier period because, for the reasons we have discussed, Grandmother was not a relative "desiring placement" at that time.  And although the Department was required to assess Grandmother during the later period, it was not required to document the assessment pursuant to this subdivision because "the social study prepared pursuant to Section 358.1" is the social study prepared for the disposition hearing.  The disposition hearing was held in November 2018, long before Grandmother indicated she was willing and able to take custody of K.B.

Focusing on the ultimate issue separate from Grandmother's specific contentions, the Department's conclusion in February 2020 that Grandmother was not a suitable placement reflects a fair consideration of the factors listed in section 361.3, subdivision (a).  Her criminal history and alleged recent drug use are relevant under subdivisions (a)(5), (a)(7)(A), and (a)(8); her unstable housing situation is relevant under subdivisions (a)(7)(A) and (a)(7)(C); and "inconsistent contact" with the Department is relevant under subdivision (a)(7)(G).  The Department facilitated visitation between Grandmother and K.B., investigated her background and present ability to care for K.B., and did not treat any of the factors weighing against her as dispositive.  The juvenile court was within its discretion, on this record, to conclude the Department's assessment of Grandmother as a placement option was adequate.

Arguing in the alternative, Grandmother also contends she is entitled to a "full assessment as required under section 361.3" in case K.B.'s current placement fails.  For the reasons we have already discussed, however, the Department discharged its duties under section 361.3.  To the extent Grandmother wants to complete the resource family approval process described in section 16519.5, that is not an issue encompassed in the appeal from the order before us.

C.     *The Juvenile Court Exercised Independent Judgment*
"When section 361.3 applies to a relative placement request, the juvenile court must exercise its independent judgment rather than merely review [the child welfare agency's] placement decision for an abuse of discretion.  The statute itself directs both the 'county social worker and court' to consider the

14

propriety of relative placement.  (§ 361.3, subd. (a).)" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033.)

The court in this case ordered the Department to provide additional information concerning its assessment of Grandmother and heard testimony from both Grandmother and a Department social worker.  The court independently reviewed Grandmother's notebook and had her resume the witness stand to answer questions from the court concerning the timing of her requests for custody of K.B. and her reasons for not contacting the Department between November 2018 and July 2019.  The juvenile court independently resolved conflicting testimony, finding, for instance, that although Grandmother denied recent drug use, "there was enough circumstantial evidence to suggest that this . . . may have been a persistent problem."

The juvenile court ultimately concluded Grandmother was not a suitable placement under section 361.3 based on the nature of her relationship with K.B., her housing situation, recent criminal history, and allegations of recent drug use.  The principal factor weighing against this conclusion was Grandmother and the parents' wishes, and even that was not a strong point in favor of a contrary conclusion given Mother's "adamant[ ]" opposition to placement with Grandmother before she later had a change of heart.  Under these circumstances, the juvenile court was not inappropriately deferential to the Department.

15

## DISPOSITION

The juvenile court's order is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.


16