Filed 12/30/20  In re Zw.K. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Zw.K. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES/CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. R.K., Defendant and Appellant. | A159110 (Alameda County Super. Ct. Nos. JD-031492, JD-031493, JD-031494) |

R.K. (Mother) appeals after the juvenile court declared her children, Zw.K., Zh.K., and Zn.K., dependents of the court under Welfare and Institutions Code section 300, subdivisions (b)(1), (c), and (g),[1] and denied her section 388 request for modification of the jurisdiction and disposition orders without an evidentiary hearing.  We conclude the jurisdiction and disposition orders are not reviewable because the notice of appeal manifested a clear and unmistakable intent to appeal only the order denying Mother's section 388 request.  We further conclude the juvenile court did not abuse its discretion

---

[1]     Further statutory references are to the Welfare and Institutions Code.

1

in summarily denying Mother's section 388 request on the grounds that she did not sufficiently allege changed circumstances, or that the requested modification—termination of jurisdiction and physical custody of the children—was in the children's best interests. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

K.H. (Father) and Mother were married in 2002 and divorced in April 2016. In or around December 2017, Father obtained sole custody of their three children, Zw.K., Zh.K., and Zn.K.

**A. Petition**

In August 2019, the Alameda County Social Services Department (Department) filed a petition under section 300, subdivisions (b)(1), (c), and (g), regarding Zw.K., Zh.K., and Zn.K., aged 15, 13, and 8 years, respectively, at the time of filing.

Counts b-1 through b-3 alleged that the children had suffered or were at substantial risk of suffering serious physical harm or illness as a result of the parents' failure or inability to supervise or protect them, and that Father was unable to provide regular care for the children due to his substance abuse (§ 300, subd. (b)(1)). Specifically, count b-1 alleged that Father drank to excess, made threats and derogatory remarks to the children while drunk, and engaged in physical altercations with his son, Zh.K. Count b-2 alleged that Father's driving while under the influence of alcohol placed the children at risk of injury. Count b-3 alleged that Father and Mother "have engaged in domestic violence incidents in which a weapon was involved while the minors were present and the father was intoxicated. A Criminal Protective Order was filed on 09/10/2018 and a restraining order filed on 02/13/2019 preventing the mother from having care of the children except for 2 hours of supervised visitation."

2

Count c-1 alleged that Zw.K. was suffering or at substantial risk of suffering serious emotional damage (§ 300, subd. (c)) due to her anxiety from the stress caused by Father's alcohol abuse, unpredictability of mood, and behavior with her and her younger siblings.

Count g-1 alleged that the children have been left without any provision for support (§ 300, subd. (g)) because Mother "is unable to care [for] the children at this time due to a Criminal Protective Order in place that allows only for supervised visitation with her children."

**B. Detention**

The children were taken into protective custody in August 2019 and placed in the home of relatives.

The detention report provided further details on the allegations of domestic violence set forth in count b-3. According to the report, on April 4, 2011, "the children witnessed domestic violence between the parents and the father was arrested. . . . [T]he father punched the mother several times in the head and 'stabbed' her in the arm with a fork. The children were present for the assault and witnessed the incident. . . . The father had felony charges of [domestic violence] which were pled down, resulting in three years [of] probation and the records were sealed in 2014." The report further noted that, among other "[c]omplicating factors," a current Criminal Protective Order (CPO) was in place against Mother that allowed for supervised visitation but did not permit her to retain legal and physical custody of the children. "Based on this, [Mother] is unable to legally come to the aid of her children as she is prohibited by this order."

The report further recounted several incidents of Father's physical and verbal abuse of the children while drunk. These included an incident in May 2019 in which Father struck Zh.K in the face resulting in bruising, called

Zw.K. a " 'bitch' " and said he would " 'destroy her like he did her mother,' " and pulled Zn.K's hair, hit her arms, and banged her head on the bed. In August 2019, the children were frightened when Father drank and berated them for " 'calling CPS on him.' "

In an interview with a social worker, Mother stated that she "has not been able to see or hear from her children for over two years due to the restraining order but has been actively fighting to see them every day since. [Mother] was recently granted visitation through Family Court but stated that the father has not been cooperating with her attorney regarding the visitation schedule and details." Mother "denied ever being diagnosed with any mental health issues. [Mother] does not see a therapist and denied any substance abuse or alcohol issues."

Zn.K. told a social worker that Mother " 'is not in the picture' because a long time ago there was a restraining order because 'the mother is messed up in the head' and that the parents were not getting along. She is 'sad that she has not been able to see her mother but happy that she does not have stress on her mind' (insinuated that because not having to see or deal with the father)." Zn.K. confirmed Father's alcohol abuse and the allegations of physical abuse between Father and Zh.K., as well as the incident where Father pulled her hair.

The eldest of the children, Zw.K., also confirmed Father's physical and verbal abuse of the children while drunk. She further "shared that in the past she did not get along with her mother but does not believe it was so bad that they should not be allowed to see each other for however long it has been. She feels that the father getting full custody and the restraining order was excessive and not necessary." Zw.K. indicated that she "would like to

4

have time with her mother again and feels that the father would benefit from having the mother's help to raise them."

The family was previously referred to Informal Family Maintenance (IFM) in 2017. After Father obtained sole legal custody of the children in December 2017, Mother "was documented to 'argue her family court case with [Department] staff and arrive at Social Services without a scheduled meeting, insisting on speaking with a supervisor.' It is further documented that [Mother] took a considerable amount of time to engage in therapy and would insist that [the Department] provide her character letters for family court. Lastly, it was documented that based on these behaviors, the father obtained a restraining order against the mother."

Mother and Father appeared at the detention hearing. The juvenile court ordered the children detained.

### C. Jurisdiction and Disposition Report

On September 9, 2019, the Department filed its jurisdiction and disposition report recommending that the allegations of the petition be sustained, and that the juvenile court order the children to remain in out-of-home placement with family reunification services. Mother was reportedly "in agreement with the recommendations," while Father wanted the children immediately returned to his care.

The report provided further details on the parents' complicated history. After their divorce in 2016, the parents engaged in ongoing custody disputes. Around December 2017, when Father obtained physical and legal custody of the children, he also obtained a restraining order against Mother.[2] The CPO against Mother was issued for her "violation of a previous Court order,

---

[2]     The appellate record in this case does not provide details on the factual basis for the restraining order against Mother.

5

restricting the mother's contact with her children." On August 30, 2019, Mother obtained modification of the CPO, allowing peaceful contact and court-ordered visitation with the children.[3]

The report contained further details about IFM in 2017. The family came to the Department's attention based on reports of "several physical confrontations" between Zw.K. and Mother. The children reportedly "expressed feeling unsafe or worried about changes they have noticed in the mother's behavior" including "paranoia, lack of focus, irritability." During IFM, Mother would often show up at the child welfare worker's office without an appointment and demand to speak with the worker and a supervisor, despite their efforts to direct her to family court. Mother continued this conduct after Father was awarded legal custody of the children.

The parents began supervised visits with the children in September 2019. In interviews with the social worker, Zw.K. reported that she only wanted to return to Father's custody if he was sober and in treatment. Likewise, Zn.K. stated that if Father was still drinking, she wanted to "stay with her relatives and 'wait some more.'" Zh.K. was open to staying with Mother.

The Department believed the children were not safe in Father's home because he was "in the beginning stages of substance abuse recovery." As for Mother, the Department concluded that she "cannot provide a home at this time due to a current [CPO] between [her] and [the] children. In addition,

---

[3]     The August 30, 2019 CPO was attached to the jurisdiction and disposition report. It states that Mother may not have any contact with or come within 100 yards of the protected persons (Father and the children), with the exception that Mother was allowed to have "peaceful contact" with the protected persons "only for the safe exchange of children and court-ordered visitation."

the mother appears to be in need of stabilizing her mental health and develop[ing] ways to address her anxiety." According to the Department, Mother "appears to be struggling with anxiety related to her past trauma and lack of contact with her children over the last few years. The mother appears to be in need of developing ways to manage her mental health."

The Department wanted "to see [Mother] develop skills to manage her anxiety and stabilize her mental health and continue to re-connect with her children." Mother continued to display behaviors observed by the Department during IFM (e.g., bringing up the family court matter, showing up at the office without appointment, calling numerous times a day with "racing thoughts"). The Department referred Mother for a psychological evaluation to identify therapeutic interventions that would best support her. In its proposed case plan, the Department set forth specific service objectives for Mother, including completing a psychological evaluation and participating in individual therapy.

### D. Jurisdiction and Disposition Hearing

An initial jurisdiction and disposition hearing was held on September 9, 2019. Minors' counsel told the court that the children wanted unsupervised and increased visitation with their parents, and that Zw.K. suggested family therapy with Mother "because it's been a few years since they had quality time with her." The children "also expressed a desire to live with their father once he has gotten further along in his treatment."

Minors' counsel also asked the court to grant Mother educational rights, but the juvenile court expressed concern that the request was "too complicated" with the CPO in place. Following this discussion, the court asked if Mother "would like to set this for contest," and Mother's counsel said yes. The court set the contested hearing for October 15, 2019.

7

Prior to the continued hearing, Mother requested judicial notice of a minute order from a September 30, 2019, hearing in Mother's criminal case. The September 30 minute order indicated that the CPO "permits the juvenile dependency court to decide whether to allow [Mother] any contact, visitation (supervised or unsupervised), or custody of her children."

The Department filed an addendum report reiterating its previous recommendations. The addendum report also explained that Mother had returned to criminal court and obtained an order permitting the juvenile court to decide whether to allow her to have any contact, visitation (supervised or unsupervised), or custody of the children. Mother reported having a new therapist and planned to engage in her second therapy session. She was apprehensive about submitting to a psychological evaluation because she believed the information might be used inappropriately by Father, but she was willing to do it.

The contested jurisdiction and disposition hearing was held on October 15, 2019. After indicating its intention to restore Mother's educational rights, the court turned to the issue of visitation and noted that "[b]ased upon the addendum report and the information in the addendum report, it sounds like both of the parents are in agreement with the recommendation, although this was on for a contest." Mother's counsel responded in the affirmative, and then directed the court's attention to Mother's request for judicial notice of the September 30 minute order from the criminal court. Mother's counsel argued that the order permitted the juvenile court to decide whether to allow Mother to have custody of the children, but the court disagreed, stating that "custody is another issue" and that allowing Mother to have custody was "still a little complicated with a CPO in place. [¶] And what the court could ask is to go back and get what we call a no-HAM [harm, annoy or molest] order, do

8

not harass, annoy, strike, batter et cetera, order versus an actual criminal protective order with a stay-way carve out."

After further discussion regarding visitation and Father's intent to seek a restraining order protecting the children against Mother's current husband, the juvenile court sustained the allegations of the petition under section 300, subdivisions (b)(1), (c), and (g). The court further concluded there was clear and convincing evidence of a substantial danger to the children if they were returned to Father's home, and that there were no reasonable alternative means to protect them without removal. The court ordered family reunification services and unsupervised visitation for both parents, and gave the Department discretion to begin overnight visits for Mother. The court also ordered the parents to "participate in all aspects of the case plan."

### E. Request for Modification

On November 1, 2019, Mother obtained a modification of the CPO. No longer a stay-away order with a carve-out for safe exchange and court-ordered visitation, the modified CPO simply provided that Mother was not to "harass, strike, threaten, [or] assault (sexually or otherwise)" the children.

On November 5, 2019, Mother filed a request under section 388 for modification, asking the juvenile court to terminate jurisdiction and award Mother custody of the children, or alternatively to order the children to reside with Mother with family maintenance services. Mother also requested judicial notice of the modified CPO and argued that the CPO, as modified, allowed her to have contact with and care for the children.[4] The juvenile court set a hearing on whether to grant or deny an evidentiary hearing on Mother's section 388 request.

---

[4]    In her section 388 request, Mother stated she had "no desire to have contact with the father."

9

The matter was heard on December 9, 2019. The Department opposed the request as premature because it was filed just a few weeks after the jurisdiction and disposition hearing, and the family had just commenced overnight visitation and family therapy. Minors' counsel joined in the Department's position.

The juvenile court remarked that it did not "see a legitimate change of circumstances" based on the allegations of the petition. "The allegation regarding mom is just that there was a domestic violence incident between the two of them that ultimately ended up requiring a CPO, and dad was intoxicated at the time, and mom was the one, at least in that incident, responsible for domestic violence. [¶] It's not as if that's untrue." The court stated that modification of the CPO into a no-HAM order was not a sufficient change in circumstances to support the requested modification of terminating jurisdiction entirely or ordering the minors to reside with the mother with family maintenance, and it was "premature" and "too early on to do that."

The court further found that the requested modification was not in the children's best interests "without further information and further therapeutic intervention." "[W]hat's in the best interest of the children at this point is not to live with their mother. They need to get reacclimated. They need to have therapy. They need to feel safe and comfortable. I need to know what's going on with mom's partner. If they're going to be at the home, what that looks like for the children. If that is an appropriate place."

Mother's counsel sought to correct the juvenile court's belief about the domestic violence incident alleged in the petition, arguing that the incident was from 2011 and that Father was the offender. Counsel argued, "there's an implication of the facts. It says in the petition that there was a weapon involved between the mother and the father. It does not say that the mother

10

was the perpetrator." The court responded, "It just says that domestic violence happened in front of the children, which is an allegation." Mother then interjected, "That was in 2011." The court stated that the allegation had been found true that " '[t]he children were exposed to domestic violence between the parents.' That's the allegation, and it's found true."

The court further concluded that even if it was "arguable" whether there was a change of circumstance, it was not in the children's best interests to be placed with Mother at the moment because it was in their interests to "continue to be supported with therapeutic interventions. That the parents continue to be supported with therapeutic interventions. That family therapy is a piece of the puzzle. And that we start moving in the direction of more liberalized visitation for the mother as well as for the father." After further discussion, the court declined to set an evidentiary hearing and denied Mother's section 388 request.

**F. Notice of Appeal**

Mother, through counsel, filed a notice of appeal specifying the "December 9, 2019 Denial of Mother's WIC section 388 Petition."

**DISCUSSION**

**A. Mother's Appeal of Dependency Jurisdiction**

Mother contends that jurisdiction under section 300, subdivision (b)(1), was not supported by substantial evidence that the children were in harm's way at the time of the October 15 hearing because the domestic violence allegation in count b-3 pertained to an incident that occurred in 2011, and the more recent CPO had nothing to do with the 2011 incident. Mother argues that the petition wrongly implied she was the domestic violence offender by combining these allegations into a single count. Mother further contends that jurisdiction under section 300, subdivision (g), was not supported by

11

substantial evidence that the children were ever left without adequate provisions for support.

The Department preliminarily contends that this court lacks appellate jurisdiction to review the juvenile court's jurisdiction and disposition orders because Mother's notice of appeal identified only the order denying her section 388 petition. We agree.

"A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395.) "The judgment in dependency proceedings is the dispositional order. [Citation.] ' " 'A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on appeal from a later appealable order.' " ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 74 (*J.F.*).)[5]

In determining appealability, the notice of appeal must be liberally construed (Cal. Rules of Court, rule 8.100(a)(2)) " 'to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' " (*In re Joshua S.* (2007) 41 Cal.4th 261, 272.) However, " 'a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed.' [Citation.] 'The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only . . . one of two separate appealable judgments or orders.' " [Citation.] Therefore, when a notice of appeal manifests a ' "clear and unmistakable" ' intent to appeal only from one order, we cannot liberally

---

[5]     A jurisdiction order is " 'appealable by way of a challenge to a dispositional order made subsequent to it.' " (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490, fn. 4.)

construe the notice to apply to a different, omitted order." (*J.F.*, *supra*, 39 Cal.App.5th at p. 76.)

On the first page of Mother's notice of appeal (Judicial Council Forms, form JV-800), under the heading "I appeal from the findings and orders of the court (*specify date of order or describe order*)," Mother, through counsel, specified the "December 9, 2019 Denial of Mother's WIC section 388 petition." On the second page, Mother left unchecked the boxes for "Section 360 (declaration of dependency) . . . with review of section 300 jurisdictional findings" and checked only the box for "Other appealable orders relating to dependency (*specify*)," without specifying what other orders she intended to appeal. Then, in the blank area after "Dates of hearing (*specify*)," Mother again specified the "December 9, 2019 Denial of Mother's WIC section 388 Petition." There is no ambiguity here. Mother's notice of appeal specifically identified the order denying the section 388 request by date and description and did not describe or allude to the jurisdiction and disposition orders issued nearly two months prior.

Mother argues we must liberally construe the notice of appeal to encompass the jurisdiction findings because the instant appeal is "intrinsically linked" to the true finding made at the October 15 hearing. Mother contends it was at the December 9 hearing on her section 388 request when she first learned of the juvenile court's mistaken belief that Mother was the aggressor in the domestic violence incident alleged in count b-3. Although the point is well-taken that the December 9 hearing included an extended discussion regarding the true findings under count b-3, we ultimately find Mother's argument unpersuasive as it relates to the notice of appeal. It is precisely because Mother became aware of the juvenile court's purported misunderstanding at the December 9 hearing that she had more

13

reason, not less, to specify the October 15 jurisdiction findings and order in her December 10 notice of appeal. Her failure to do so, combined with her specific identification of the order denying the section 388 request, clearly demonstrates an intent to appeal only from the section 388 matter.

Mother's cited case authorities do not compel a different conclusion. In *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, the court construed a notice of appeal specifying the jurisdiction order to include the disposition order because the two were rendered simultaneously on the date specified in the notice of appeal and were entered in a single written order. (*Id.* at p. 1017.) Here, however, the order denying the section 388 request was issued separately and almost two months after the jurisdiction and disposition orders. In *In re Josiah S.* (2002) 102 Cal.App.4th 403, the court construed a notice of appeal, which the mother prepared herself, to include an order summarily denying a section 388 petition because the petition addressed issues similar to those raised in a six-month status review report that the mother did not receive in advance of the hearing. (*Id.* at pp. 413, 418.) Here, in contrast, Mother's counsel completed and filed the notice of appeal on Mother's behalf, and there were no extenuating circumstances such as Mother's untimely receipt of a report or record that could explain her failure to appeal from the jurisdiction findings after disposition.

In sum, we cannot liberally construe Mother's notice of appeal to embrace the October 15 jurisdiction and disposition orders. (*J.F.*, *supra*, 39 Cal.App.5th at pp. 78–79 [notice of appeal from order terminating parental rights did not embrace earlier order denying section 388 petition.) Accordingly, we lack jurisdiction to review them.[6]

---

[6] We add some further observations for the information of the juvenile court and the parties. The language of count b-3 could be read to imply that

14

**B. Section 388 Petition**

Mother contends the juvenile court abused its discretion when it denied her an evidentiary hearing on her section 388 request.

Section 388 allows a parent or other person with an interest in a dependent child to petition the juvenile court to change, modify, or set aside a previous order. (§ 388, subd. (a).) "The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).) Such change must be " 'of such significant nature that it requires a setting aside or modification of the challenged prior order.' " (*Ibid.*) "To obtain an evidentiary hearing on a section 388 petition, a parent must make a prima facie showing that circumstances have changed since the prior court order, and that the proposed change will be in the best interests of the child. [Citations.] To make a prima facie showing under section 388, the allegations of the petition must be specific regarding the evidence to be

_____

Mother was the domestic violence offender and that the CPO issued against her was related to her commission of domestic violence. But this is not the only reasonable interpretation of count b-3. Nowhere in the petition is it expressly alleged that Mother committed domestic violence, and the Department acknowledges that "the juvenile court initially misinterpreted the petition language" but later clarified that the true finding was simply that domestic violence occurred in front of the children. The allegation regarding the CPO is reasonably interpreted as a circumstance existing at the time of the October 15 hearing that rendered Mother incapable of protecting the children from the risks of Father's alcohol abuse. (See *In re R.T.* (2017) 3 Cal.5th 622, 627–629 [section 300 does not require parent's neglect or blameworthy conduct, only actual inability to provide for necessary supervision or protection].) In short, the record does not indicate that dependency jurisdiction under section 300, subdivision (b)(1), was based on a true finding of domestic violence by Mother.

presented and must not be conclusory." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) While a section 388 petition must be liberally construed in favor of its sufficiency, the allegations must describe specifically how modification will advance the child's best interests. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) We review the denial of a section 388 request for abuse of discretion. (*Mickel O.*, at p. 616.) "The test for abuse of discretion is whether the court exceeded the bounds of reason." (*Ibid.*)

Mother argues that she sufficiently alleged changed circumstances because the CPO, modified from a stay-away order with exceptions to a no-HAM order, allowed her to take custody of the children. But even accepting this allegation as true, we perceive no abuse of discretion in the juvenile court's conclusion that Mother did not show such a "significant" change as to require terminating jurisdiction and granting her custody. (*Mickel O.*, *supra*, 197 Cal.App.4th at p. 615.) The modification of the CPO did not rectify all of the problems that led to dependency jurisdiction as related to Mother. She had already violated a restraining order leading to the CPO, and the Department was concerned about her mental health and anxiety, as demonstrated by her demanding and uncooperative behavior throughout IFM and the dependency proceedings. The children, too, expressed concerns about Mother's mental health in their interviews with the Department. Mother's section 388 papers did not allege that she had participated in a psychological evaluation pursuant to the Department's case plan, and the record showed that Mother had just started individual therapy at the time of the section 388 hearing. Obtaining modification of the CPO was certainly an important step, but Mother remained bound by the terms of the CPO and could still violate them. On this record, the juvenile court did not abuse its discretion in

16

considering the circumstances to be changing, but not yet changed.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 49.)

Nor did the juvenile court exceed the bounds of reason in finding that terminating jurisdiction and granting immediate custody of the children to Mother was not shown to be in the children's best interests.  In determining whether a party has established the best interests component under section 388, subdivision (d), one of the factors that courts consider is the strength of the existing bond between the minor and the parent.  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530–532.)  Although the record shows the children wish to have Mother back in their lives, it also shows they have had little contact with her over the last few years.  Mother's requested modification came a few weeks after the jurisdiction and disposition hearing, with expanded visitation and therapy just beginning.  Both the Department and the children's counsel were opposed to Mother's immediate custody, and the children expressed their desire to live with Father once he made progress in treatment, which conflicted with Mother's desire for custody and no contact with Father.  Moreover, Mother's section 388 papers contained no facts about the safety and suitability of her home, or her current husband's relationship with the children.  On this record, the juvenile court did not exceed the bounds of reason in concluding that a change as significant as that sought by Mother in her section 388 request was not yet shown to be in the children's best interests.

Finally, we are not persuaded that the juvenile court's best-interests analysis was negatively impacted by its interpretation of count b-3.  Although the juvenile court initially believed Mother to be the perpetrator of the domestic violence, the court eventually clarified that its true finding was simply that domestic violence occurred in front of the children.  As recounted

17

above, the juvenile court's best-interests analysis was reasonably based on appropriate considerations such as the children's need to reacclimate themselves to Mother after a two-year separation, the early stage of family therapy, and Mother's failure to allege facts regarding the safety and suitability of her home.

For these reasons, we conclude the juvenile court did not abuse its discretion in summarily denying Mother's section 388 request.

## DISPOSITION

The judgment and order denying Mother's section 388 request are affirmed.

_____

Fujisaki, J.


WE CONCUR:


_____

Siggins, P.J.


_____

Jackson, J.


A159110